### LEE SING FAR v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 2, 1899.)

No. 488.

1. CHINESE EXCLUSION ACT—PERSONS BORN IN UNITED STATES.
    A person born in this country of Chinese parents, who are permanently domiciled here, though aliens, is a citizen of the United States, and cannot be excluded therefrom or denied the right of entry.[1]

2. SAME—HABEAS CORPUS PROCEEDINGS—SUFFICIENCY OF EVIDENCE.
    In habeas corpus proceedings brought by a Chinese person claiming the right to enter the United States from China, on the ground of being a citizen of this country by birth, the court is not bound to accept the testimony of the petitioner's witnesses as conclusive, though uncontradicted, and where in such a case it appeared that petitioner, a girl 20 years old, had resided in China for 17 years, and the testimony as to her identity with the person claimed to have been born here was inconclusive or improbable, the finding of the court and its referee, who heard the witnesses, will not be disturbed on appeal.

Appeal from the District Court of the United States for the Northern District of California.

S. C. Denson and A. H. Yordi, for appellant.

E. J. Banning, Asst. U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. Appellant claims to be a native-born citizen of the United States. She arrived in San Francisco on June 25, 1898, on the Pacific mail steamship Peru from China, and was by

[1]As to citizenship of Chinese, see note to Gee Fook Sing v. U. S., 1 C. C. A. 212.

the collector of the port denied the right to land.    Thereafter a writ of habeas corpus was sued out in her behalf in the United States district court.    The case, in accordance with the usual custom, was referred to Hon. E. A. Heacock, a special referee and commissioner of said court.    In due time he heard the testimony, and made his report thereon to the district court, recommending that judgment of remand be entered.    The report of the referee was adopted by the court, and judgment entered accordingly.    The appeal is taken from said judgment.

Did the court err in holding that appellant was not born in the United States, and that she was not entitled to enter and remain in the United States?    Are the order and judgment of remand contrary to law, and unsupported by any evidence?    These are the only important questions presented for our consideration.    Preliminary to any decision upon the merits, there arises the question whether the case is properly before us for review.    There was no exception taken by appellant's counsel to the report of the referee.    Ordinarily the court, in such cases, is not called upon to examine the testimony taken before the referee.    The judgment is entered as of course.    It is only in cases where petitioner or the United States takes an exception to the report that the district court is called upon to examine the evidence.    Why should not the applicants in this class of cases be held to have waived or lost their rights, if no exception to the report of the referee is taken, the same as litigants in civil or other cases?    The practice is not uncommon in the Chinese cases for counsel not to take any exception, and then, after the district court has entered judgment of remand, to have a substitution of attorneys, who come into the case and claim, as in the present case, that the former attorney, by inadvertence, oversight, or neglect, failed to note any exception to the report "until after the time allowed by law for taking such exceptions had passed," and for that and other reasons ask for a rehearing, which, if granted, often enables the applicant, after finding out the reasons given by the referee for the remand of the applicant, to supply the "missing link" in the evidence from willing witnesses near at hand, although it is always claimed in the petition that their presence or knowledge of facts was before unknown. Such procedure, on the part of the petitioners, for a writ of habeas corpus, does not commend itself to our favor.    As no objection to the consideration of this case upon such grounds has been urged on behalf of the United States, we proceed to a discussion of the case upon its merits; first stating that the district court properly refused to grant a rehearing herein.    At the hearing before the referee, four witnesses were examined: Lee Cum Duck, Low Jew, Leong Lai, and Lee Sing Far, each of whom testified that appellant was born in the United States.    Lee Cum Duck, on behalf of petitioner, testified that he had lived in California 23 years; that Lee Sing Far was his daughter; that she was born at 815 Washington street, in March, 1879; that he took his family, consisting of his wife, the petitioner, and two other girls (sisters of Lee Sing Far), to China, on the ship Gaelic, in 1882, and left her there with her mother; that he remained in China about two years, and then returned to California; that he had never

written any letter to his daughter, but sent letters every year to his wife; that he sent money to his wife in China, and told her to send the daughter Lee Sing Far here, and she sent me a photograph "on the same boat that the girl came"; that he only identified her because of that fact; and that he had not seen her since he left her in China. Low Jew testified that he had been in California 21 years; that he knew Lee Sing Far ever since she was born; that she was born at 815 Washington street, San Francisco; that she, with her father, mother, and two sisters, went to China in 1882; that witness went to China in 1890, and returned in 1891; that, when he arrived in China, he called on Lee Cum Duck's wife, and called again when he was about to return to California; that he had no talk with the petitioner on either visit; that he did not hear her talk; that she was in a room, sewing; that at his first visit he remained there "just long enough to deliver the letter, and immediately came away"; that "the second time I went there, and asked if they had a letter for me to bring back; I got the letter and left"; that Lee Sing Far's face was towards him, but he did not know whether she saw him or not; that on both occasions he saw her well enough to identify her; and that petitioner is the same person he then saw in China. Leong Lai testified that he lived in California 21 years; that he knew Lee Sing Far, and had known her from the time she was born; that she was born on Washington street, third floor, 815, Chum Di Ho's building; that she went to China, in 1882, with her father and mother and two sisters; that the other two girls were twins, and were born at the same place; that he went to China in 1896, and returned to California in 1897; that, while in China, he saw Lee Sing Far twice at Dock Sing Lee street in Canton, China; that he called at the house to deliver some money sent to Lee Sing Far's mother by her father from California; that he delivered a letter and the money to this girl's mother; that he remained but five or six minutes, "and gave the money and the letter, and that is all"; that at the second time he stayed "a few minutes, just long enough to get a letter"; that he did not at either time talk to petitioner; that he saw her face "kind of sideways"; and that she was sewing and sitting down in the next room. If appellant was born in the United States, of parents of Chinese descent, who, at the time of her birth, were subjects of the emperor of China, but had a permanent domicile and residence in the United States, and were here carrying on business, and were not employed in any diplomatic or official capacity under the emperor of China, she would become at the time of her birth a citizen of the United States, and be entitled to all the rights, privileges, and immunities, as such, including her right to land and remain in the United States. U. S. v. Wong Kim Ark, 169 U. S. 649, 705, 18 Sup. Ct. 456, and authorities there cited.

The question which we are called upon to decide is not whether there was any evidence tending to establish the fact that appellant was born in the United States, but is whether the evidence is so clear and satisfactory upon that point as to authorize this court to say that the court erred in refusing her to land, and in entering judgment that she be remanded. From the testimony it appears that appellant

is of Chinese parentage.   She has been in China, with her mother, for 17 years.   In such a case it cannot be said that any presumption arises that she was born in the United States.   It, therefore, devolves upon her to prove to the satisfaction of the court that she was born in this country.   It does not necessarily follow that, because four witnesses have testified positively that she was born in San Francisco, there being no witness to the contrary, their statements upon this question must be accepted as true.   If such a rule were adopted and followed, there would be no more Chinese remanded in such cases. It is safe to say that the United States is powerless to make any proof in any case as to the place of birth of Chinese children.   In the very nature of the case it would, as a general rule, be impossible to do so.   The only protection to the government, in the enforcement of the exclusion act in this character of cases, lies in the cross-examination of each witness, on behalf of the petitioner, whereby the "crucial test" of his credibility may be applied.   It may or may not always be successful; but it has often been said to be one of the most efficacious tests which the law has devised for the discovery of truth.

In The Ottawa, 3 Wall. 268, 271, the court said:

"Cross-examination is the right of the party against whom the witness is called, and the right is a valuable one as a means of separating hearsay from knowledge, error from truth, opinion from fact, and inference from recollection, and as a means of ascertaining the order of the events as narrated by the witness in his examination in chief, and the time and place when and where they occurred, and the attending circumstances, and of testing the intelligence, manner, impartiality, truthfulness, and integrity of the witness."   1 Greenl. Ev. § 426.

If, from the whole testimony, the court is not satisfied that the witnesses have told the truth, it has the right to exclude their testimony, and remand the petitioner, because the evidence offered is insufficient to convince the mind of the court that the petitioner is entitled to land in the United States.   Take the present case:   Is there any satisfactory evidence as to the identity of Lee Sing Far as the daughter of Lee Cum Duck?   The testimony is to the effect that she left California when she was between 2 and 3 years of age. The father had not seen her for 15 years before she arrived in the United States, in 1898.   Admitting that there may be in many cases certain recognized family characteristics and resemblances that might enable the parents to recognize one of their own children after such a period of time, yet that lapse of time and change from childhood to maturity is liable to bring many changes in the features and general characteristics of the individual.   It is not impossible, but very improbable, that her father, under the circumstances of this case, would have recognized or been able to identify his child by her features and general appearance.   But the testimony is clear that he did not so identify her.   He sent money to China to her mother to enable the daughter to come to America, and the mother sent a photograph of the daughter to Lee Cum Duck, and it was by means of this photograph that he recognized her.   He testified "that he only identified her because of that fact."   Is this such a clear identification as would enable this court to say that the court erred in holding that it was not satisfactory?   Would it not open the door to imposition and

fraud in the identity of Chinese persons claiming the right to land in the United States? Is the identity of appellant strengthened by the testimony of Low Jew and Leong Lai? These witnesses state that they identified her; that they had seen her twice in China before she came to America; and that they were at her mother's house at two different times, not exceeding five minutes at each time, and saw her in an adjoining room, but did not know whether she saw them or not. Is this such positive or clear evidence as to carry conviction to the mind of the court? Does it not bear the earmarks of suspicion as to its truth? Is the court compelled to accept such testimony as being satisfactory?

In U. S. v. Chung Fung Sun, 63 Fed. 262, Coxe, District Judge, said:

"The contention in the case of Chung Fung Sun is that he was born in California twenty years ago; that his father, when he was five or six years old, returned to China with his wife and child, remained there à year and a half, and then came back to this country, leaving his wife and the appellant in China, where his wife has lived ever since, and where the appellant lived until the present year. This is sworn to by the alleged father; but the inherent improbability of the story must be apparent to all."

See, also, Gee Fook Sing v. U. S., 1 C. C. A. 211, 49 Fed. 147; Lem Hing Dun v. Same, 1 C. C. A. 209, 49 Fed. 148.

Upon the point as to the identity of a Chinese person, the case of U. S. v. Tom Mun, 47 Fed. 722, decided by Judge Hoffman, may be examined with profit. The law is well settled that a witness may very seriously impair his credibility by swearing positively and minutely to occurrences which were not of such a nature as to impress themselves forcibly upon his memory. Willett v. Fister, 18 Wall. 91, 97. It was for the referee, in the first instance, to determine the credibility of the respective witnesses and the sufficiency of the testimony. The witnesses were brought before him. He had the opportunity, of which we were deprived, of seeing them, and noticing their manner and appearance,—their freedom or hesitation in answering questions. These and other circumstances of like character are often as safe a guide as the mere language used by the witness in enabling the court to determine the truth or falsity of the testimony. It is true that a witness is presumed to speak the truth; but this presumption may be overcome and repelled by the manner in which he testifies, by his demeanor on the witness stand, by the character of his testimony, by the circumstances and surroundings under which he testified, whether his statements are reasonable or unreasonable, the probable or improbable nature of the story he tells, his opportunities of seeing and knowing the matters concerning which he testifies, and his interest, if any, in the proceedings; and if, from these and other circumstances, the court is of opinion that his statements are false, incredible, or unsatisfactory, it has the right to reject them. Of course this power is not an arbitrary one, and should in all cases be exercised with legal discretion and sound judgment. These methods furnish a safe landmark by which courts and juries are usually enabled to determine the credibility of any witness who testifies in their presence. U. S. v. Ybanez, 53 Fed. 536, 541; Same v. O'Brien, 75 Fed. 900, 911; Shelp v. U. S., 26 C. C. A. 570, 81 Fed.

694, 698, 699; 29 Am. & Eng. Enc. Law, .768, and authorities there cited.

In Elwood v. Telegraph Co., 45 N. Y. 549, 553, the court said:

"It is undoubtedly the general rule that where unimpeached witnesses testify distinctly and positively to a fact, and are uncontradicted, their testimony should be credited, and have the effect of overcoming a mere presumption. Newton v. Pope, 1 Cow. 110; Lomer v. Meeker, 25 N. Y. 361. But this rule is subject to many qualifications. There may be such a degree of improbability in the statements themselves as to deprive them of credit, however positively made. The witnesses, though unimpeached, may have such an interest in the question at issue as to affect their credibility, * * * and, furthermore, it is often a difficult question to decide when a witness is, in a legal sense, uncontradicted. He may be contradicted by circumstances as well as by statements of others contrary to his own. In such cases courts and juries are not bound to refrain from exercising their judgment, and to blindly adopt the statements of the witness, for the simple reason that no other witness has denied them, and that the character of the witness is not impeached." Wait v. McNeil, 7 Mass. 261; Koehler v. Adler, 78 N. Y. 287, 291.

In Quock Ting v. U. S., 140 U. S. 417, 420, 11 Sup. Ct. 733, 851, the court said:

"Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced."

This court, in Gee Fook Sing v. U. S., supra, where the testimony as to the point that petitioners were born in the United States was as positive as in the present case, said:

"The evidence is not sufficient to make a case in favor of the appellant so clear as to warrant this court in reversing the judgment of the district court upon the facts. As to each of the cases, we consider that the evidence, as a whole, does not make as good a case for the appellant as it might be reasonably expected a man would make out in his native city, after time for ample preparation; and the case is such as any impostor could easily make. We hold that when, upon a candid consideration of all the evidence in a case, there appears to be room for a difference of opinion as to the material facts in issue, this court ought not to reverse the judgment on a question of fact alone."

We are still of the same opinion.

From the views herein expressed it is unnecessary to notice the other question argued by appellant's counsel. The judgment of the district court is affirmed.