IN THE MATTER OF THE APPLICATION OF WONG LIN ON BEHALF OF WONG CHONG, for a writ of *habeas corpus*.

DECIDED: NOVEMBER 5, 1900.

1.   The Territory of Hawaii is a part of the United States, and subject to the so-called "Chinese Exclusion Laws" passed by Congress.

2. Where a Chinese person claims admission into the United States on the ground that he is a citizen thereof, the burden of proof is on him to prove such contention.
3. Application for a writ of habeas corpus applied for alleging detention by the Collector of Customs of the port of Honolulu with intent to return petitioner to China, heard by the Court, where the petition alleged that petitioner was a citizen of the United States, having been born in the Hawaiian Islands.
4. The uncorroborated testimony of Chinese witnesses will not be accepted as sufficient to identify a Chinese person claiming the right to enter the United States on the ground that he was born in this country, where, as in this case, he left the Hawaiian Islands, the alleged place of birth, when he was seven years of age, and did not return until after the lapse of twelve years; and specially where the testimony of the person claiming admission shows not the slightest recollection of the place where he claims to have been born or of its people; and there being no direct testimony that he was born in the Islands given even by the Chinese witnesses.

CHINESE EXCLUSION LAW.    HABEAS CORPUS.

*Paul Neumann,* attorney for petitioner.
*John C. Baird,* U. S. District Attorney for respondent.

ESTEE, J.    This is a proceeding in *habeas corpus* initiated by one Wong Lin, who states in his petition that he is and has been for twenty-one years last past, a resident of the Territory of Hawaii; that one Wong Chong is his son and that he was born on the Island of Oahu, in the Hawaiian group in 1881; that in the year 1888, the wife of petitioner left the Hawaiian Islands and returned to the Empire of China, taking with her the said Wong Chong and another son.    It is further alleged that Wong Chong returned to Hawaii on or about September 23, 1900, on the steamer "Coptic" from Hong Kong, but was refused the right to land by the Collector of Customs of the port of Honolulu, who unlawfully restrained him of his liberty on the ground that Wong Chong is not entitled to land in the United States.

The return recites that the body of Wong Chong is produced in Court in obedience to the writ; it admits the restraint, but denies that the same is unlawful or that the said Wong Chong

is entitled to land in the United States, or that he was born herein. It is alleged that the father of the subject is a Chinese laborer and that Wong Chong is himself an alien Chinese laborer and therefore not entitled to come into the United States.

This petitioner seeks the admission of his reputed son, Wong Chong, under the claim that he was born in the Hawaiian Islands, and therefore is a citizen of the United States and entitled to land as such.

The first question presented is whether or not Wong Chong was born in these Islands.

In this class of cases, the burden is on the party seeking admission to prove that he was born in the United States.

*In re Jew Wong Loy*, 91 Fed. Rep. 240; *Lee Sing Far v. U. S.*, 94 Fed. 834; *In re Louie You*, 97 Fed. Rep. 580.

Wong Lin, the reputed father of Wong Chong, the party seeking admission, hesitated about testifying directly as to the place of his son's birth. In reply to a question as to when he came here, he testified:

"My wife came here in 1880; I came here in 1878."

And in response to the following question put by his counsel,

Q. "Now then, did you have any children by your wife while you lived here?" answered—

"I had children; I have when the children come to her * * * my wife left the islands in 1888. She left here for China— my boys went back with my wife * * * I never registered their births—the eldest boy was seven years' old when he went back to China, the youngest was two years old."

It will be seen that this man claiming to be the father of Wong Chong does not testify directly or clearly that the boy was born in the Islands. And in response to repeated efforts on the part of counsel to elicit some facts from Wong Chong, the young man himself, he utterly failed to state any fact about the Hawaiian Islands, or of his residence here, and failed to remember any words of either English or Hawaiian he may have learn-

ed while here. He spoke only Chinese. Yet the testimony shows that if he left here at all, he was seven years of age at the time of his departure, an age sufficient to have left some slight remembrance of the place where he was born or of its people. He simply testified that his mother told him he was born in these Islands, and claims to have remembered only that he went away from here on a vessel to China.

Three other Chinese witnesses, friends of the putative father, strove to identify the young man as the son of petitioner, but in no one instance did they testify directly as to his having been born here. Wong Tack, said "the eldest was seven and the youngest was two years old when they left here and I recognize both of them. I did not know Wong Lin's boys would be in Court yesterday. I first saw them yesterday afternoon. When I first saw them in Court I knew they were Wong Lin's boys." He had previously testified that he had seen the boys at the home of Wong Lin prior to their departure for China, twelve years ago. But it does not seem reasonable to suppose that this witness could recognize these boys after the lapse of so many years, and when the eldest at least had almost grown to manhood.

Lau San, another witness, was uncertain as to his recollection of the boy or of his recognition of him as Wong Lin's son. He said "I remember the elder one when he went back to China, but now I can't remember him." While Lau Hee Fan, the last of the three Chinese witnesses, had no memory at all, stating "the father told me that the boy went back to China with the mother," and when asked if he recognized one of these boys, now, he answered—"Well, it is so long I have not memory. There was a celebration one month after the boy was born, a celebration in the Chinese way."

There were no white witnesses produced on the hearing; all material facts were offered by the reputed father, Wong Chong, the party seeking admission and these three Chinese friends.

It was said in the case of *In re Louie You*, 97 Fed. Rep. 580, that—

"The uncorroborated testimony of Chinese witnesses will not be accepted as sufficient to identify a Chinese person claiming the right to enter the United States on the ground that he was born in this country, where it is admitted that he left it when he was three years old and has remained away for sixteen years."

See also the case of *In re Lau Sam*, decided by this Court August 22nd, 1900. (*)

And in this case there is no definite testimony even by the Chinese witnesses that the boy Wong Chong was born here.

Since 1882, the Congress of the United States has legislated against Chinese laborers coming into this country. The right to so legislate not only exists in Congress by reason of the sovereign power of the nation, but because of the treaty relations with the Empire of China.

It is historically true that the supply of Chinese laborers is unlimited in number and that its continued and unrestrained immigration into the United States tends to crowd out free American labor from ffollowing its usual pursuits and thus decreases the demand for and lowers the value of such labor. Chinese laborers come to America to work only (being better paid here than in their own country), and not to become a part of the body politic; they rarely bring their families with them or encourage American home life; they are always Chinamen in America and not Americans; they live apart here as in China. It thus seemed dangerous to the American republic to admit on an equal footing with American labor, these vast hordes of Chinamen who neither love this country nor assimilate with its civilization. The presence of such a people tends to create class and racial distinctions, and tends also to lower the standard of American manhood, by placing beside American men competing in the field of labor, a different race of men, who know nothing of free institutions and only seek our shores for a tem-

porary advantage. The wisest American statesmanship therefore thought it necessary to limit the large and ever increasing influx of a class of foreign laboring men who as before stated, did not and from racial and other reasons could not, assimilate with and become a part of American civilization, and hence the passage of the various restriction laws upon Chinese immigration as a matter of protection to American labor.

It is not questioned that the Territory of Hawaii is now a part of the Territory of the United States, and subject to the exclusion laws which have been passed by Congress in relation to the Chinese.

Section 5 of the Act of Congress to provide a government for the Territory of Hawaii, (vol. 31, U. S. Stats., page 141), prescribes that—

"Except as herein otherwise provided, all the laws of the United States which are not locally inapplicable, shall have the same force and effect within the said Territory as elsewhere in the United States."

See also Section 101 of the same Act.

The fact that most of the capital and the larger part of the labor of these Islands are engaged in the production of sugar cane, has created a demand for cheap labor, and the national Chinese exclusion acts while they may seem to be in conflict with the monetary interests of the Territory of Hawaii will yet be of permanent advantage to the people of the Territory by encouraging local and American labor. These laws were inspired by a regard for the good of the American people as a whole, of which the citizens of this Territory now form a part.

It therefore becomes necessary for the United States Courts to scrutinize closely any attempt to evade these exclusion acts upon the part of Chinese laborers seeking to enter the Territory of the United States.

Wong Chong failed to prove to the satisfaction of the Court that he was born in these Islands. It is therefore unnecessary

4—U. S. D.

to consider the further question involved herein as to whether if he had been born here nineteen years ago before this Territory became annexed to and a part of the United States, he would have been a citizen of the United States and entitled to land here now.

The writ is denied. Let him be remanded.

---

([1]) *In re Lau Sam, Ante* p. 6.