## LEE AH YIN v. UNITED STATES.

### (Circuit Court of Appeals, Ninth Circuit. May 19, 1902.)

### No. 756.

1. CHINESE EXCLUSION—PLACE OF BIRTH—EVIDENCE—FINDING—APPEAL.

Where, in proceedings for the deportation of a Chinese woman, she testified and offered other evidence to prove that she was born in the United States, which evidence was practically without contradiction, but there were inconsistencies in the evidence which might well cause its truths to be doubted, and circumstances which tended to impeach her evidence, the finding of the commissioner against such evidence should not be set aside.

2. SAME—CHINESE LABORER—PROSTITUTE.

The term "Chinese laborers," as used in the act of congress of May 5, 1892, entitled "An act to prohibit the coming of Chinese persons into the United States," and the act of November 3, 1893, amendatory thereof, includes a Chinese prostitute.

3. SAME—SPECIFICATION OF CERTAIN LABORERS—EFFECT.

The act of congress of November 3, 1893, amending the act of May 5, 1892, "to prohibit the coming of Chinese persons into the United States," providing in section 2 that "the words 'laborer' or 'laborers,' wherever used in this act, or the act to which this is an amendment, shall be construed to mean both skilled and unskilled manual laborers,

including Chinese employed in mining, fishing, huckstering, peddling, laundrymen, or those engaged in taking, drying or otherwise preserving shell or other fish for home consumption or exportation," did not limit the meaning of such words so as to exclude any persons who were laborers within the meaning of such words as used in the treaty of 1880 (22 Stat. 826).

In Error to the District Court of the United States for the Northern District of California.

Denson & Schlesinger, for plaintiff in error.

Marshall B. Woodworth, U. S. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. On April 26, 1901, the plaintiff in error, a Chinese woman, was arrested and brought before a United States commissioner on the charge of being a Chinese manual laborer, within the limits of the Northern district of California, without the certificate of residence required by the act of congress approved May 5, 1892, entitled "An act to prohibit the coming of Chinese persons into the United States," and the act of November 3, 1893, amendatory thereof. The commissioner, upon the evidence taken, found and adjudged that the plaintiff in error is a subject of the Chinese Empire, and is a Chinese manual laborer, without the required certificate of residence, and ordered that she be deported to China. Upon appeal to the district court the judgment and order of deportation were affirmed. To review that judgment the present writ is sued out. It was shown by the evidence before the commissioner that the plaintiff in error came from China to the port of San Francisco in the year 1897 on the steamship Rio de Janeiro, and that the collector of the port permitted her to land on her claim that she was a native-born citizen of the United States. The evidence is silent as to her occupation since landing, except that it shows, without contradiction, that she was, when arrested, with other girls in a house of ill fame, and that she stated to the officer making the arrest that she had been an inmate of the house for "some time." There was no evidence that she ever did any manual labor. She testified, and offered to prove by other witnesses, that she was born in the United States, but the commissioner, upon the evidence, found otherwise, and his judgment was affirmed by the district court. We have considered the evidence with some care, and we find no ground for disturbing the conclusion which was reached by the commissioner and by the district court. It may be true, as suggested by counsel for the plaintiff in error, that the evidence offered by the plaintiff in error as to the place of her nativity and the occupation of her father in the United States was practically without contradiction, but there were inconsistencies in the evidence which may well have caused the commissioner and the court to doubt its truth, and there were circumstances which tended to impeach the evidence of the plaintiff in error. We cannot say that the judgment was clearly against the weight of the evidence. U. S. v. Chung Fung Sun (D. C.) 63 Fed. 261; Lee Sing Far v. U. S., 35 C. C. A. 327, 94 Fed. 834; Gee Fook Sing v. U. S., 1 C. C. A. 211, 49 Fed. 146.

The case presents the question of law whether a Chinese woman who

is an inmate of a house of prostitution is a manual laborer, within the meaning of the acts of congress above referred to. The memoranda submitted and discussed in the negotiations between the high contracting powers, which culminated in the adoption of the treaty of 1880 between the United States and China (22 Stat. 826), indicate that the words "Chinese laborers" as used in the treaty were intended to designate all immigration to the United States from China other than that of the privileged classes, who were by the terms of the treaty permitted to come for purposes of teaching, trade, travel, study, and curiosity. Such being the intention and meaning of the treaty, it must be held that both the exclusion act of May 6, 1882, enacted "to execute the treaty stipulations relating to the Chinese," and the Geary act, approved May 5, 1892, adopted the words "Chinese laborers" with the meaning attached thereto by the treaty. In U. S. v. Douglas (C. C.) 17 Fed. 634, it was said that the term "Chinese laborers" as used in the act of May 6, 1882, "must have the same significance as the words used in the treaty." In the Case of the Chinese Merchants (C. C.) 13 Fed. 607, Mr. Justice Field said that the act of May 6, 1882, "was framed in supposed conformity with the provisions of the treaty." See, also, the opinion of Ross, circuit judge, in U. S. v. Ah Fawn (D. C.) 57 Fed. 591, in which are set forth in full the memoranda upon which the treaty was based, and in which the conclusion was reached that the words "Chinese laborers" are broad enough in their meaning and intent to include Chinese gamblers and highbinders. Conformably to that interpretation of the act and by parity of reasoning, a prostitute would be included in the term "Chinese laborers." But it is said that the act of November 3, 1893 (28 Stat. 14), has so defined the words "Chinese laborers" as to restrict their meaning to those persons whose occupations are specifically named therein and to those whose occupation it is to perform manual labor. The act is amendatory of the Geary act. Section 2 provides as follows:

"The words 'laborer' or 'laborers,' wherever used in this act, or in the act to which this is an amendment, shall be construed to mean both skilled and unskilled manual laborers, including Chinese employed in mining, fishing, huckstering, peddling, laundrymen, or those engaged in taking, drying or otherwise preserving shell or other fish for home consumption or exportation."

We do not think it was the purpose of this amendatory act to enlarge the limits of the privileged classes or to restrict the meaning of the term "laborers" as it had been used in the treaty and in the prior acts. We think its purpose was not to remove any of the bars against Chinese immigration, but to remove doubt, and make definite and certain, as included within the designation "laborers," certain occupations which were upon the border line between the occupation of laborer and that of merchant, and which in some aspects might be regarded as belonging to the merchant class. The occupation of mining, taking fish for the purpose of selling the same, peddling, operating a laundry, etc., partake of some of the characteristics of the occupation of the merchant, and those engaged therein might in a sense be deemed merchants. Evidently it was to define these specific occupations, and to declare that persons engaged therein are not merchants, that the act

was adopted. We find in it no evidence of an intention to enact that the word "laborers," as used comprehensively in the treaty and in the prior acts, was thereafter to be confined solely to manual laborers and to those who follow the specific occupations enumerated. It is not declared that such and none other are to be deemed laborers. It is significant that the next clause of the same section of the amendment defines the term "merchant," and provides that the term as employed therein and in the acts of which it is amendatory shall have that "meaning and none other."

We find no error in the judgment of the court below in ruling that the plaintiff in error was a laborer. The judgment is affirmed.