MOY GUEY LUM v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1914.)

No. 2000.

1. ALIENS (§ 32*)—DEPORTATION OF CHINESE—REVIEW OF PROCEEDINGS TO DEPORT.

A commissioner's finding, affirmed by the District Court, that a Chinese person is unlawfully within the United States, is conclusive unless the commissioner and the court arbitrarily ignored the evidence and entered judgment in defiance thereof.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. § 32.*]

2. ALIENS (§ 32*)—DEPORTATION OF CHINESE—WEIGHT AND SUFFICIENCY OF EVIDENCE—"SATISFACTORY EVIDENCE."

The statute requiring a Chinese person sought to be deported to establish by affirmative proof to the satisfaction of the judge or commissioner his lawful right to remain in the United States does not invest the judge or the commissioner with arbitrary power, but only requires proof which ordinarily satisfies an unprejudiced mind beyond a reasonable doubt; this constituting "satisfactory evidence."

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. § 32.*

For other definitions, see Words and Phrases, vol. 7, pp. 6335, 6336.]

3. ALIENS (§ 32*)—DEPORTATION OF CHINESE—WEIGHT AND SUFFICIENCY OF EVIDENCE.

In a proceeding to deport a Chinese person, who claimed to be a citizen by reason of his birth in the United States, evidence *held* insufficient to establish his citizenship beyond a reasonable doubt, and hence the finding of the commissioner and District Court that he was not lawfully entitled to remain in the United States would not be disturbed.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92, 93–95; Dec. Dig. § 32.*

What Chinese persons are excluded from the United States, see note to Wong You v. United States, 104 C. C. A. 538.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; J. Otis Humphrey, Judge.

Proceeding by the United States to deport Moy Guey Lum. An order of deportation was affirmed by the District Court, and defendant appeals. Affirmed.

Appellant, who is a Chinese person, was ordered to be deported by the commissioner. Subsequently the District Court affirmed the order of deportation, which judgment is assigned as error. The cause is before us on appeal from that order.

On the hearing before the commissioner, appellant testified that he was, at the time of his arrest, 20 years of age; that his father, Moy Nie Yin, was then, and for some time previous thereto had been, a merchant in Philadelphia, Pa., and had lived in this country more than twenty years. He further testified on the trial that he was born in Philadelphia; that he returned to the United States in the year 1911; that his mother had died ten years prior to the time of his trial; that he had corresponded with his father, who had returned to Philadelphia; that after his mother's death he had lived with his grandmother; that his father had sent him money from time to time. He further testified that his father had told him not to return to the United States, but that funds had been saved up out of moneys sent by his father sufficient to provide him with transportation and pocket money. According to his account, he feared he would not be admitted to the United States, not having the statutory certificate of residence, and therefore bought a ticket in China for Vera Cruz, Mexico, via Vancouver and Montreal. From Vera Cruz he went to a town in Mexico just across the border line from El Paso, Tex., where he worked two months in a Chinese grocery store. From that town he entered the United States surreptitiously under the tutilage of a Chinaman named Yee, and arrived in Chicago after a two days' trip as a stowaway in a box or baggage car, where he was arrested. In his statement before the Chinese inspector, appellant made a somewhat different statement; in substance, that he had lived over a laundry in Philadelphia for a good many years, "just loafing around," but did not know the street; that he "was little then"; that he did not remember when he went to China or with whom; he was then two or three years old; that since he came back he had been living in the

United States in different places—a long time in Philadelphia. When asked if he meant that he "went to China when you were little and returned when two or three years old and have been living here ever since?" he answered, "Yes." He said he left Philadelphia over ten years ago and had been living in San Francisco over ten years, which city he had left over ten days ago; that he did not know the name of the town where he entered the baggage car; that he hid in the baggage car because he had no money to pay car fare; that he was never in Mexico; and that he had no certificate of residence because "I was little then and my father didn't secure me any." On the hearing of the cause, Moy Nie Yin, the alleged father of the appellant, was sworn and testified that he had lived in Philadelphia since he came, with his wife, to the United States, Kwang-hsu 7th, with the exception of a short time, when he stayed in New York to collect accounts; that he was the owner of the Chinese grocery business which he conducted; that the young man, Moy Guey Lum, then on trial, was his son; that appellant was born in Philadelphia Kwang-hsu 17th, where he lived with witness until four years of age, when he was taken to China by his parents; that after six months witness returned to Philadelphia where he had lived substantially ever since; that he had corresponded with his wife and son before the wife died and with appellant thereafter, and sent him money. The witness further testified that appellant had written a letter within the last year stating that he, the son, wished to come to the United States, but that he had written to him that he did not want him to come; that he wanted him to go to school in China, and knew nothing of appellant's coming until he heard he had been arrested in Chicago. On cross-examination, when shown his certificate of residence, which recited that in 1894 he had resided two years in New York, witness denied that such was the case and said the paper was procured by his cousin; that he only stayed in New York while making collections. He further testified that the accused was 20 years old, and that he had no other children. Moy Wing was sworn, and testified that he had known Moy Nie Yin since Kwang-hsu 16th, in Philadelphia; that he knew the boy and had known his mother in her lifetime; that she had borne a son to Moy Nie Yin in Philadelphia (this appellant); that witness worked in that city a few months after the child was born and then came to Chicago; that he afterwards saw Moy Nie Yin here on his way to and on his return from China; that when he went to China his wife and appellant, then about four years old, were with him; that appellant was born while witness was in Philadelphia; and that he had not seen him since he was four years old until the present time. Wong Kong, being sworn, stated that he never had known Moy Nie Yin; that he lived in Portland, Or.; that appellant's father sent $50 to witness with which to procure $100 Mexican money and take it to appellant in China, which he did.

The District Court, on appeal taken to it, affirmed the order of deportation made by the commissioner as above stated.

Benjamin C. Bachrach, of Chicago, Ill., for appellant.

James H. Wilkerson, U. S. Atty., Walter P. Steffen and Lin William Price, Asst. U. S. Attys., and John Byrne, all of Chicago, Ill., for the United States.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). In United States v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456, 42 L. Ed. 890, the court, after quoting the first clause of the fourteenth amendment to the Constitution reading as follows, viz., "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state in which they reside," says, "and, this being true, the Chinese Exclusion Acts do not apply to him." The defendant in that case was the child of Chinese parents who, at the time of defendant's birth, had a permanent

residence in California and were engaged in commercial pursuits and not in any diplomatic or official capacity. The parents returned to China, but the son remained in California. When about 21 years of age he departed for China on a visit with the intention of returning. The court, on page 705 of 169 U. S., page 478 of 18 Sup. Ct. (42 L. Ed. 890), further says the question there presented was "whether a child born in the United States, of parents of Chinese descent, who, at the time of his birth, are subjects of the Emperor of China, but have a permanent domicile and residence in the United States, and are there carrying on business, and are not employed in any diplomatic or official capacity under the Emperor of China, becomes at the time of his birth, a citizen of the United States," and thereupon decrees that under such circumstances he does become a citizen. This ruling was followed in Chin Bak Kan v. United States, 186 U. S. 200, 22 Sup. Ct. 891, 46 L. Ed. 1121; Re Giovanna (D. C.) 93 Fed. 660; Lee Sing Far v. United States, 94 Fed. 836, 35 C. C. A. 327.

[1] The question before us, therefore, is whether there was evidence before the commissioner and the District Court sufficient to establish to the satisfaction of the commissioner and District Court that respondent was lawfully entitled to remain in the United States.

Under the statute, a Chinese person must be adjudged unlawfully within the United States unless he "shall establish by affirmative proof to the satisfaction of such justice, judge or commissioner, his lawful right to remain in the United States." The decisions are numerous to the effect that in this class of cases, where the facts have been already determined by two judgments below, the appellate court cannot properly re-examine them. This language is used by the United States Supreme Court in Chin Bak Kan v. United States, supra. Where the question is one of fact as to whether the respondent is a native of this country, it has been held in some of the federal courts that the decision of the District Court will not be reversed on appeal. Yee Yet et al. v. United States, 175 Fed. 565, 99 C. C. A. 187; Chew Hing v. United States, 133 Fed. 227, 66 C. C. A. 281; Eng Choy v. United States, 175 Fed. 566, 99 C. C. A. 188.

In Lee Ah Yin v. United States, 116 Fed. 614, 54 C. C. A. 70, the court, on appeal, re-examined the facts, notwithstanding the judgment of the District Court affirming the order of deportation entered by the commissioner, and decided that such facts did not justify it in disturbing the judgments of the lower tribunals.

[2, 3] Undoubtedly the language of the statute requiring that a Chinese person "shall establish by affirmative proof to the satisfaction" of the judicial officer before whom he is examined that he is entitled to remain in the United States should not be construed to invest that officer with arbitrary power. "By satisfactory evidence, which is sometimes called sufficient evidence," says Greenleaf on Evidence, vol. 1, § 2, "is intended that amount of proof which ordinarily satisfies an unprejudiced mind beyond reasonable doubt." The testimony had before the commissioner in the present case cannot be said to settle the question of citizenship of appellant beyond a reasonable doubt. The representations made by appellant to the inspector, introduced in evi-

dence, discloses statements entirely at variance with his testimony before the commissioner. When asked what he did in Philadelphia, he replied, "Nothing, just loaf around." When asked, "When did you come from China?" he answered, "When I was two or three years old." When asked, "Where have you been living in the United States since you came back?" he replied, "Different places * * * long time in Philadelphia. * * * Left Philadelphia over ten years ago." He further said he had been living in San Francisco since leaving Philadelphia; that he left there ten days ago; that he had lived there more than ten years, on Jackson street. He is made to say that he went to China when he was little and returned when he was two or three years old and had been in the United States ever since. If he told the truth before the commissioner, all of the above statements were false. As admissions, however, they serve to discredit the story he told the commissioner. Furthermore, his testimony as to the route he took in coming to this country was so remarkable as to justify the commissioner in scrutinizing his statement very closely. The further fact that he entered the United States surreptitiously was rightly taken into consideration by the commissioner. While the testimony of the alleged father seems on its face to be devoid of suspicious indicia, it must be remembered that the commissioner had the witness before him and was able to form an opinion as to his truthfulness from his conduct on the stand. The fact that the witness' certificate of residence stated that he had lived two years in New York prior to the issuance thereof, whereas he states that he never had lived in New York, may have cast some discredit upon his testimony in the mind of the commissioner and the District Court. The father had not seen the son for about sixteen years according to his own statement. Moy Wing, likewise, had not seen the appellant for the same period. He identified appellant only upon the father's statement. Wong Kong had never met the father until the time of the trial. He saw the boy in China about a year before the trial and gave him funds sent by the father. He himself did not know the appellant prior to that time.

We have nothing to do with the weight of the evidence. Unless we can see from the record that the commissioner and the court arbitrarily ignored the evidence adduced and entered judgment of deportation in defiance thereof, we are not at liberty to interfere. Under the facts of the present case, we are unable to say that the appellant has proved beyond a reasonable doubt that he was entitled to remain in the United States.

Such being the case, the judgment of the District Court is affirmed.