### LOUIE DAI v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. December 23, 1916.)

#### No. 2146.

1. ALIENS ☞32(8)—EXCLUSION OF CHINESE—DEPORTATION PROCEEDINGS—EVIDENCE.

In proceedings to deport a Chinese person, evidence *held* insufficient to show that defendant had been recently smuggled into the United States, notwithstanding his contradictory statement that a Canadian certificate, showing his recent arrival there, was his.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ☞32(8).]

2. ALIENS ☞32(8)—EXCLUSION OF CHINESE—BURDEN OF PROOF—MERCANTILE STATUS—"SATISFACTORY EVIDENCE."

Under Chinese Exclusion Act May 5, 1892, c. 60, § 3, 27 Stat. 25 (Comp. St. 1913, § 4317), providing that any Chinese person, or persons of Chinese descent, shall be adjudged to be unlawfully within the United States, unless he shall establish by affirmative proof to the satisfaction of the judge

or commissioner his right to remain, when construed in the light of the intent manifested by the Chinese exclusion legislation, one claiming to be a merchant must prove that fact, not merely prima facie, but beyond a reasonable doubt; "satisfactory evidence" being that which ordinarily satisfies an unprejudiced mind beyond a reasonable doubt.

[Ed. Note.—For other cases, see Aliens, .Cent. Dig. § 84; Dec. Dig. ☜32(8).

For other definitions, see Words and Phrases, First and Second Series, Satisfactory Evidence.]

3. ALIENS ☜21—EXCLUSION OF CHINESE—STATUTE—MERCHANTS.

The Chinese Exclusion Act, though not excluding merchants, embraces all Chinese within its terms, and imposes on all, including merchants, certain requirements as a condition to the privilege of remaining in this country.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 74; Dec. Dig. ☜21.]

4. ALIENS ☜23(2)—EXCLUSION OF CHINESE—MERCHANT—CHANGE OF STATUS.

A Chinese person, who was a merchant during the period of registration, does not lose his right to remain in the country by thereafter becoming a laborer.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 77; Dec. Dig. ☜23(2).]

5. ALIENS ☜32(8)—EXCLUSION OF CHINESE—EVIDENCE—MERCHANT.

In proceedings for the deportation of a Chinese, who was a laborer when he was arrested, evidence held to show, notwithstanding the finding of the commissioner and of the lower court to the contrary, that he was a merchant during the registration period.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ☜32(8).]

6. ALIENS ☜32(8)—EXCLUSION OF CHINESE—EVIDENCE—WEIGHT.

The language of the Chinese Exclusion Act, prescribing the character of the testimony required of defendant in deportation proceedings, does not authorize a judicial officer arbitrarily to disregard it; but it must be weighed, accepted, reconciled, or rejected, like other testimony.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ☜32(8).]

7. ALIENS ☜32(12, 13)—EXCLUSION OF CHINESE—DEPORTATION PROCEEDINGS—REVIEW—FINDINGS OF FACT.

A finding of the commissioner and the District Court against the claim of a Chinese person that he was a merchant can be inquired into and reversed by the appellate court, though that court will be very slow in disturbing such a finding.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 95; Dec. Dig. ☜32(12, 13).]

8. ALIENS ☜32(6)—EXCLUSION OF CHINESE—ADMISSIBILITY OF EVIDENCE—TESTIMONY OF CHINESE.

The provision of Chinese Exclusion Act May 5, 1892, § 6, as amended by Act Nov. 3, 1893, c. 14, § 1, 28 Stat. 7 (Comp. St. 1913, § 4320), relating to a Chinese laborer who fails to produce his certificate of registration, which requires him to prove his residence by at least one credible witness other than Chinese, does not extend to section 3 (section 4317), relating to proof by other Chinese of their right to remain; and one claiming to have been a merchant during the registration period may prove that fact by Chinese witnesses.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 94; Dec. Dig. ☜32(6).]

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Proceeding by the United States against Louie Dai, alias Mar Ginn, for his deportation as a Chinese laborer unlawfully within the United States. From an order of deportation, defendant appeals. Reversed.

James Mercer Davis, of Camden, N. J., for appellant.

Francis Fisher Kane, U. S. Atty., and Robert J. Sterrett, Asst. U. S. Atty., both of Philadelphia, Pa.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an appeal from an order of deportation. The appellant (defendant below) was charged with being a Chinese laborer unlawfully within the United States, in violation of the Chinese Exclusion Act. 27 Stat. 25; 28 Stat. 7. At the hearing he admitted that when arrested he was a laborer, but offered evidence tending to show that he came to this country in 1890; that then and throughout the registration period following, he was a merchant; that subsequently he became a laborer, and therefore was lawfully in this country. The government rested its case (1) upon evidence that the defendant was smuggled into the country in 1908; and, failing in that, (2) upon the ground that the defendant had failed to establish his right to remain in the country by affirmatively and satisfactorily proving his mercantile status.

[1] It was testified that the defendant's business name is Louie Tai. When arrested, there was found in his house a head tax certificate, issued by the Dominion of Canada, at Vancouver, on April 2, 1908, to one Louie Dai. The government maintained that the certificate identified the defendant and proved that at or subsequently to its date, he had been smuggled into the United States.

The defendant met the inference of the government's evidence of smuggling, by producing four white witnesses and one Chinese witness, who testified that they had known him as a resident of Lansdowne, Pennsylvania, engaged in the laundry business, long before the date of the head tax certificate and continuously throughout periods beginning respectively in 1901, 1902, 1903 and 1904.

In reply, the government introduced statements of the defendant made when arrested, that he arrived in Vancouver in 1908, crossed into the United States, and that the head tax certificate was his. These admissions are diametrically opposed to the defendant's testimony given before the Commissioner, and would end the case, were it not for the positive and wholly convincing testimony of the four white witnesses to the effect that the defendant had been a laundryman at Lansdowne, Pennsylvania, for a period beginning long before the date of the certificate. The testimony of these witnesses is of a character that simply compels belief. The admissions of the defendant, in opposition to their testimony and in conflict with his own subsequent testimony, are incomprehensible, except that such conflict quite customarily occurs in cases of this character and is some-

times properly explained, by the theory that the defendant, frightened by arrest and answering through an interpreter, does not wholly understand the question, or does not tell the exact 'truth. We cannot allow these admissions, damaging as they are upon their face, to overcome the uncontroverted and very convincing testimony of five unimpeached witnesses to the contrary. We are therefore of opinion, as evidently was the District Court, that the government had failed to sustain its contention that the defendant had been smuggled into the country, and that the case resolved itself solely into an issue of the defendant's status at the time he arrived here.

Upon this issue the defendant testified, that before leaving China in 1890, he procured a "merchant's certificate," and that upon arriving in this country he went into partnership with his uncle in the grocery business in San Francisco; that he continued in that business until 1895, when, involving the partnership by gambling, he ran away and left his certificate with his uncle; that his uncle has since died and the certificate has disappeared. The defendant's testimony was supported by that of two Chinese witnesses. One was a Chinese doctor who spent six months of 1891 in San Francisco settling the affairs of a deceased relative, to whom the uncle of the defendant was indebted. He testified that his business with the defendant's uncle repeatedly brought him in contact with the defendant and that the defendant was in partnership in the grocery business with his uncle in San Francisco. The other Chinese witness testified that he was employed in a store in San Francisco just around the corner from the place where the defendant conducted the grocery business. He could not say that the defendant was in partnership with the uncle, but knew that the defendant was working in the store.

Opposed .to this, the government produced only informal testimony, that is, a letter of the American Consul General at Canton, China, stating that in the somewhat uncertain records kept by his office in 1890, there is no entry that a "passport" in the nature of a merchant's certificate of the defendant was viséed at that office or fees received therefor; and a letter of the Commissioner of Immigration at San Francisco to the effect that his records fail to disclose the defendant's arrival at San Francisco at the time he stated. The government thereafter relied mainly upon the failure of the defendant's testimony to sufficiently establish his right lawfully to remain in the country.

' While the question of the defendant's status is one solely of fact, two questions of law are raised concerning the evidence required by the statute to establish the fact. These are: (1) On whom is the burden of proving that the defendant was a merchant during the registration period? and (2) by the testimony of what class of witnesses may that fact be established?

[2] Upon the first question the defendant maintains that all that is required of him is some proof that he was a merchant during the registration period; that having no statutory presumption to overcome, as in the case of a laborer failing to produce a certificate of residence, that proof may be merely prima facie, and that such prima

facie proof is sufficient to establish his right to remain in the country until the government, like any public prosecutor, proves the contrary by evidence beyond a reasonable doubt. We do not believe this is a correct statement of the rule.

An inquiry into the scheme of the Chinese Exclusion Act discloses what the Congress intended was the restriction of Chinese labor in this country by the exclusion of Chinese laborers; that in carrying out this purpose, the Congress recognizing treaty obligations, very carefully preserved the right of all Chinese (whether laborers or others) then lawfully in the country to remain here thereafter. Being directed against laborers as a class, the act required every Chinese laborer to register within a certain time and procure a certificate that he was a resident of the United States at the time of the passage of the act, and to further effectuate its purpose, the act provided that "Any Chinese laborer  *  *  *  found within the jurisdiction of the United States without such certificate shall be deemed and adjudged to be unlawfully within the United States," and accordingly deported. 28 Stat. 7, § 1 (sec. 6). There were in the country at the time Chinese of favored classes, notably merchants, who were not subjected to the requirement of registration. They were permitted to register if they chose, but were not required to do so, and were entitled to remain without registration. In re Chin Ark Wing (D. C.) 115 Fed. 412; United States v. Lee You Wing, 211 Fed. 939, 128 C. C. A. 437.

[3] While not burdened with the duty of registering or with the consequences of deportation for failure to produce a certificate of registration imposed upon laborers, Chinese merchants are not wholly free from the operation of the act. Though treating merchants as a favored class exempt from its penalties, the act nevertheless initially embraces all Chinese of whatever class, and places upon all certain requirements as the price to be paid for the privilege of remaining in this country. The inclusion of all classes was the means adopted to accomplish the exclusion of the labor class. With respect to laborers, these requirements are registration, and, when arrested, the production of a certificate or other prescribed evidence of residence, and upon failure, deportation. With respect to Chinese generally, including merchants and other favored classes, as we have said, registration was not required, but a duty was nevertheless imposed upon each, when arrested, to "establish, by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States." 27 Stat. 25, § 3. Thus under the scheme of the statute, the burden of proving in one way or another their lawful right to remain in the country is placed upon all Chinese arrested. The statute offered Chinese merchants an easy way of meeting the requirement to affirmatively and satisfactorily establish their lawful right to remain in the country because of their mercantile status by permitting them to register, not as laborers but as merchants, and to receive certificates of residence as merchants, which, when authentic, were of course the highest type of affirmative proof required. If a Chinese merchant failed to avail himself of the opportunity to secure evidence of this type, then the statute says he may still prove by other evidence his right to remain in the

country. With respect to such other evidence, the statute does not prescribe a particular kind, as in the case of a laborer, but it does require that it be of a particular strength, and it also requires that it be produced by the one asserting or defending under it. 27 Stat. 25, § 3.

This evidence must be affirmative, for the statute so says, and it must be of a force sufficient to establish the fact, which it is intended to prove, to the satisfaction of the tribunal. "By satisfactory evidence, which is sometimes called sufficient evidence," says Greenleaf on Evidence, volume 1, section 2, "is intended that amount of proof which ordinarily satisfies an unprejudiced mind beyond a reasonable doubt." This we believe to be the quality of evidence prescribed by the statute to establish the right to remain in the country. Mere prima facie evidence failing to sustain the burden of convincing is manifestly not what the statute intends. Moy Gusy Lum v. United States, 211 Fed. 91, 127 C. C. A. 515; U. S. v. Chum Hoy, 111 Fed. 899, 50 C. C. A. 57.

The statute not only prescribes the character or probative force of the evidence necessary to be produced, but it defines who shall produce it by saying "that *any* Chinese person, * * * arrested under the provisions of this act," shall produce such evidence or be adjudged to be unlawfully within the United States. As the statute places upon Chinese persons generally the burden of proving their lawful right to be in the country, it is entirely logical that when a Chinese person relies upon his mercantile status for his right to be here, the burden is upon him to prove it. United States v. Lung Hong (D. C.) 105 Fed. 188; United States v. Lee You Wing, 211 Fed. 939, 128 C. C. A. 437. The government may controvert that evidence in the customary way, or because of the particular burden placed upon the defendant, the government may rest and at times succeed upon his failure to produce evidence of the affirmative and satisfactory character required. Whether by his evidence the Chinese person has placed himself beyond the statute or has failed to do so, then becomes a question to be determined by the tribunal before which the case is tried.

[4-6] What was before the two tribunals below? When the defendant was arrested he was engaged as a laborer. This he concedes, but maintains that this was an after-acquired status and that at the time of the test of his right to remain in the country, namely the registration period, he was not a laborer but was a merchant. If the court should so find, then under the authorities the change of status does not work a forfeiture of his right lawfully to remain in the country. In re Chin Ark Wing (D. C.) 115 Fed. 413; United States v. Lee You Wing, 211 Fed. 939, 128 C. C. A. 437; United States v. Leo Won Tong (D. C.) 132 Fed. 190; In re Yew Bing Hi (D. C.) 128 Fed. 319; United States v. Louie Juen (D. C.) 128 Fed. 522; United States v. Sing Lee (D. C.) 71 Fed. 680; United States v. Moy Yim (D. C.) 115 Fed. 652. But under the circumstances, especially the circumstance of his arrest as a laborer, there devolved upon the defendant the necessity of overcoming the natural presumption arising from his status when arrested. This was that of a laborer, and being a laborer when arrested, he was bound to produce a laborer's certificate or show a reason why such certificate

could not or need not be produced by him. This the defendant attempted to do by producing evidence that he was a merchant at the registration period, and that therefore he could not have a laborer's certificate, also that he did not have an optional merchant's certificate. The testimony of the defendant upon the question of his mercantile status was disregarded by the court below because of inconsistencies in his two statements, and the testimony of the other two witnesses upon the subject of his occupation was disregarded without reasons given. As we look at the record, the testimony of the three witnesses was consistent one with the other, was positive, and was only slightly disturbed by the negative testimony produced by the government. The inconsistencies in the two statements of the defendant did not affect the consistency of the testimony of the other two witnesses, and it may not be amiss to say that the testimony of the other two witnesses, being wholly consistent with that of the defendant, reduced somewhat the inconsistencies of the defendant's testimony. It is sometimes difficult to know how to treat testimony which is positive in character, yet concerning which doubts are entertained. Much is necessarily and very properly left to the trial tribunal, which has the advantage of seeing the witness and hearing the spoken testimony. But it has been held that the language of the act prescribing the character of testimony required of a defendant in a case like this, does not invest the judicial officer with arbitrary power to disregard it. Moy Guey Lum v. United States, 211 Fed. 91, 127 C. C. A. 515. It must be weighed, accepted, reconciled or rejected like other testimony. When disregarded, there must be some reason for such action, and in this case we are very much at a loss to find a reason for disregarding the testimony produced by the defendant concerning his mercantile status.

[7] But it is urged that upon this subject we need not trouble ourselves, for on the authority of Moy Guey Lum v. United States, 211 Fed. 91, 94, 127 C. C. A. 515, and Lee Ah Yin v. United States, 116 Fed. 614, 54 C. C. A. 70, an appellate court is without power to inquire into or disturb the findings of the Commissioner and the District Court upon questions of fact in these cases. We do not find this proposition correct. Being conscious of the difficulties incident to the administration of the Chinese Exclusion Act, our views are of course in entire harmony with those very generally expressed by other federal courts, that an appellate court should be slow, very slow, in disturbing the findings of fact of the Commissioner and the District Court, but that appellate courts have jurisdiction to inquire into and to reverse such findings is, in our judgment, beyond question. We are constrained to believe that in this case error was committed in failing to accord to the testimony its natural probative force, and in failing to find that it was of the force required by the statute.

[8] The second question of law relates to the persons who, as witnesses, are competent to prove the defendant's mercantile status, or, stated differently, do the provisions of section 6 of the act, which require a laborer, upon failing to produce a certificate, to establish his residence by "at least one credible witness other than Chinese," extend to the provisions of section 3, which require "any Chinese

person" to establish his right to remain in the country by "affirmative proof to the satisfaction" of the judge? The authorities on this question are not numerous. United States v. Louie Juen (D. C.) 128 Fed. 522; United States v. Sing Lee (D. C.) 71 Fed. 680. Unless disqualified by provisions of the act, Chinese persons are competent witnesses. The statute in no place disqualified them. They may testify in any number to any fact. The law simply limits their number as witnesses to one fact, and provides, that as to that fact, testimony shall not be conclusive unless it include the testimony of a witness other than Chinese. That fact is the residence of laborers, and does not, by expression or necessary implication, extend to the fact of the occupation of merchants. We are therefore of opinion that the evidence of the defendant's mercantile status is not insufficient because it consisted wholly of the testimony of Chinese witnesses.

The order of deportation is reversed.