UNITED STATES v. AH FOOK et al.

(Circuit Court of Appeals, Ninth Circuit.  Nov. 22, 1910.)

No. 1,829.

1. ALIENS (§ 25*)—CHINESE EXCLUSION ACT—CHINESE SEAMEN.

The Chinese exclusion acts do not apply to Chinese seamen serving on board vessels touching at American ports while on a voyage to a foreign port; such seamen being authorized to land on giving bond to depart within 30 days as required by commerce and labor regulation rule 32.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 79; Dec. Dig. § 25.*]

2. BAIL (§ 42*)—CHINESE CRIMINALS—VALIDITY OF BAIL BOND.

A Chinese seaman being authorized to land in the United States on giving bond to depart within 30 days, as required by commerce and labor rule 32, a bail bond given by such seaman, on being arrested in the United States for violating the customs revenue law, was valid.

[Ed. Note.—For other cases, see Bail, Dec. Dig. § 42.*]

Appeal from and Error to the District Court of the United States for the Northern Division of the Western District of Washington.

Action by the United States and others against Ah Fook and others on a bail bond. From an order declaring the bond void ab initio and releasing the sureties, the United States brings error and appeals. Reversed.

Elmer E. Todd, U. S. Atty., and Charles T. Hutson, Asst. U. S. Atty.

Will H. Thompson, Fred H. Lysons, and Miller & Lysons, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge.  This is an appeal and writ of error brought to review an order entered January 17, 1910, in the United States District Court for the Western District of Washington releasing Chin Kee and Gon Quay from the bail bond of one Ah Fook taken by the United States commissioner in that district.  The bond was in the form of a recognizance.  It was dated December 31, 1907; was filed in the District Court on January 8, 1908; and was in the sum of $750.  It was conditioned:

"That if the said Ah Fook shall personally appear before the District Court of the United States in and for the district aforesaid at Seattle, Washington, on the 5th day of the present or any future term thereof, and then and there answer the charge of having, on or about the 23d day of December, 1907, within said district, in violation of section 3082 of the Revised Statutes of the United States, unlawfully brought into the United States goods of foreign growth and manufacture, to wit, about 100 yards of silk manufactured in China on which the duty imposed by law had not been paid, he, the said Ah Fook, well knowing that the said duty had not been paid, and then and there abide the judgment of said court, and not depart without leave thereof, then the recognizance to be void; otherwise to remain in full force and virtue."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It appears that Ah Fook was a seaman on board the steamship "Shawmut," plying between the ports of Hong Kong, China, and Seattle, Wash., and while said vessel was in the port of Seattle on December 23, 1907, he was arrested upon a warrant issued by the United States commissioner upon a complaint charging Ah Fook with the crime of smuggling into the United States silk goods of Chinese manufacture. Upon the hearing before the commissioner, Ah Fook was held to bail in the sum of $750, and thereupon Ah Fook, with Chin Kee and Gon Quay, entered into the recognizance heretofore described, and thereupon Ah Fook was released from arrest. On June 2, 1908, the grand jury for the Western district of Washington returned an indictment against Ah Fook charging him with the crime of smuggling, as was charged in the complaint filed before the commissioner. On the 16th day of February, 1909, Ah Fook was called for arraignment and, failing to respond, the United States attorney moved the court for an order forfeiting the bail. Thereupon an attorney appeared and informed the court that he had been advised that Ah Fook was dead, and moved the court for an order of reference to take the testimony as to the fact. The order of reference was made, but no testimony appears to have been taken as further investigation disclosed the fact, as appears by the affidavit of Chin Kee, one of the bondsmen, that Ah Fook, when released from arrest upon the warrant issued by the commissioner, resumed his place as a seaman on the steamship "Shawmut" for the return voyage to Hong Kong. Upon the arrival of the vessel in Hong Kong, the master of the vessel discharged Ah Fook and canceled his articles of employment and refused to return him to the port of Seattle either as a seaman or a passenger. Negotiations were thereupon entered into with other transportation companies for the purpose of returning Ah Fook to Seattle, resulting in an agreement on the part of one company to bring him to Seattle as a passenger on condition that arrangements be made with the immigration authorities which would enable them to land him at that port. The matter was taken up with the officers of immigration at Seattle and through them with the Secretary of Commerce and Labor upon an application that Ah Fook be permitted to return and land in this country. This permission was refused except upon certain specified conditions. The communication informing the bondsmen of these conditions was as follows:

"Seattle, November 6, 1908.

"Fred H. Lysons, Attorney at Law, Seattle, Washington—Sir: Referring to recent correspondence in the matter of the application of the bondsmen of one Ah Fook, a member of the crew of the S/S 'Shawmut' December 14th last for permission to return to the United States in order to stand trial for smuggling silks, you are advised that we are in receipt of a communication from the department in which it is held that Ah Fook may return to the United States only as a seaman, and if he should do so he may be permitted to land under bond as in the case of other Chinese seamen. The bondsmen interested in securing the attendance in court should furnish such bond conditioned for his departure from this country at the termination of his trial or of his sentence, if convicted, without cost to the government.

"Respectfully,         John H. Sargent, Inspector in Charge.
"H. A. M."

The conditions upon which Ah Fook was to be allowed to return and land in the United States were, therefore: (1) He should be returned to the United States as a seaman only. (2) That he should furnish a bond as a Chinese seaman before being permitted to land. (3) That the bond so furnished should be conditioned for the departure of Ah Fook from this country at the termination of his trial, or of his sentence if convicted. (4) That such departure should be without cost to the government.

These conditions were imposed by the Department of Commerce and Labor by reason of the terms of the Chinese exclusion acts excluding Chinese laborers from the United States, and the regulations of the Department of Commerce and Labor made and prescribed under the authority of such acts.

The court below held, that as Ah Fook was a Chinese seaman, he was a laborer, and therefore of a class of aliens absolutely prohibited from entering the United States and could not lawfully be at large on bail, and that the bond for his release was void ab initio. It was, accordingly, ordered that the sureties on the bail bond should be released from liability.

It is contended on the part of the appellant that, although Ah Fook was a Chinese person, he was not a laborer within the meaning of the Chinese exclusion acts, and therefore not a member of a class absolutely prohibited from entering the United States; that he could properly be at large in the United States on bail; and that, being on bail and absent from the United States, the conditions imposed by the government for his return in accordance with the stipulated terms of his bail did not justify the court in releasing the sureties from the bail bond.

It has been held that the Chinese exclusion acts were intended to exclude Chinese laborers who would come into the United States with the intention of laboring here and entering into competition with the labor of this country, and did not apply to Chinese seamen serving on board vessels touching at an American port while on the voyage to a foreign port. In re Moncan (C. C.) 14 Fed. 44. It has also been held that Chinese seamen landing temporarily for no other purpose than to reship so soon as shipment can be obtained in the ordinary pursuit of their vocation on the high seas were not within the act. In re Ah Kee (D. C.) 22 Fed. 519; In re Jam (D. C.) 101 Fed. 989. In the last two cases, to guard against abuses the court required that such persons should be required to give bond with surety in the sum of $500 to the collector to ship within 30 days and to produce to the collector a certificate of the shipping commissioner to that effect. The Attorney General of the United States, in an opinion dated September 10, 1901 (22 Opinions of Atty. Gen. 521, 523), and furnished to the Secretary of the Treasury, refers approvingly to the decision on this question by Judge Toulmin in United States v. Burke (C. C.) 99 Fed. 895, 898, where the court said:

"My opinion is that these statutes (immigration statutes) do not contemplate the exclusion of the crews of vessels which lawfully trade to our ports, and that they do not, in spirit or in letter, apply to seamen engaged in their calling, whose home is the sea, and who are here to-day and gone to-morrow;

who come on a vessel into the United States with no purpose to reside therein, but with the intention when they come of leaving again on that or some other vessel for the port of shipment or some other foreign port in the course of her trade. To hold that these statutes apply to aliens comprising the bona fide crews of vessels engaged in commerce between the United States and foreign countries would lead to great injustice to such vessels, oppression to their crews, and serious consequences to commerce."

In accordance with these opinions, the Commissioner of Immigration, with the approval of the Secretary of Commerce and Labor, has provided in regulations approved February 26, 1907, for the temporary admission of Chinese seamen, as follows:

"Rule. 32. To prevent violations of law by Chinese seamen discharged or granted shore leave at ports of the United States, bond with approved security in the penalty of $500 for each seaman shall be exacted for his departure from and out of the United States within thirty days."

Section 18 of the immigration act of March 3, 1903 (32 Stat. 1213, 1217, c. 1012), makes it the duty of the owners, officers, and agents of any vessel bringing an alien into the United States to adopt due precautions to prevent the landing of any such alien from any such vessel at any time or place other than that designated by the immigration officers, and punishes him if he lands, or permits to land, any alien at any other time or place. In Taylor v. United States, 207 U. S. 120, 28 Sup. Ct. 53, 52 L. Ed. 130, the Supreme Court had before it the question whether that section applied to the ordinary case of a sailor deserting from the vessel while on shore leave. The court held that it did not. The court said, at page 124 of 207 U. S., at page 54 of 28 Sup. Ct. (52 L. Ed. 130):

"The phrase which qualifies the whole section is 'bringing an alien to the United States.' It is only 'such' officers of 'such' vessels that are punished. 'Bringing to the United States,' taken literally and nicely, means, as a similar phrase in section 8 plainly means, transporting with intent to leave in the United States and for the sake of transport—not transporting with intent to carry back, and merely as incident to employment on the instrument of transport. So again, literally, the later words 'to land' mean to go ashore. To avoid certain inconveniences the government and the courts below say that sailors do not land unless they permanently leave the ship. * * * 'Landing from such vessel' takes place and is complete the moment the vessel is left and the shore reached. But it is necessary to commerce, as all admit, that sailors should go ashore, and no one believes that the statute intended altogether to prohibit their doing so. The contrary always has been understood of the earlier acts, in judicial decisions and executive practice."

Under the statute as thus construed by the courts and applied in practice by the Executive Department having charge of its administration, we see no legal objection to an alien seaman on shore leave having been arrested for a violation of the customs revenue law giving valid bail upon the charge and securing his release from custody. If the accused demands a prompt hearing as he is entitled to, there is no reason why his guilt or innocence of the charge made against him should not be judicially determined within the thirty days provided by the regulations as the limit of his stay in the country. The warrant of arrest in this case commanded the United States marshal to apprehend the said Ah Fook wherever found in his district. The return of the marshal is that he executed the warrant by arresting Ah

Fook at Seattle, Wash. It does not appear that at the time of his arrest Ah Fook was unlawfully at large under the immigration laws. On the contrary, the presumption is that he was lawfully in Seattle and competent to bind himself and be bound by others to respond to the charge that he had violated a law of the United States. We are of opinion, therefore, that the bail bond was not void, either ab initio, or at all, by reason of his status under the immigration laws. What defense the sureties might make to an action on the bond we are not called upon to decide. Whether they could set up the action of the Department of Commerce and Labor in imposing conditions in returning Ah Fook to this country to meet the charge against him is a question not involved in the validity of the order before the court.

For the reasons stated, we think the judgment of the court in entering the order releasing the sureties of the bail bond should be reversed, and it is so ordered.