UNITED STATES v. CROUCH.

(Circuit Court, E. D. New York. April 8, 1911.)

1. ALIENS (§ 53*)—VESSEL'S CREW—RIGHT TO LAND—PRIVILEGES OF SAILORS.
    A member of a vessel's crew (not Chinese), though ineligible for admission to the United States as an alien immigrant, is still entitled to land on shore leave and remain within the physical boundaries of the United States until his vessel sails, without being sent to observation quarters of the Bureau of Immigration for inspection as an immigrant.
    [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 53.*]

2. ALIENS (§ 23*)—EXCLUSION—CHINESE PERSONS—PERSONS ENTITLED TO ENTER.
    Under Act Sept. 13, 1888, c. 1015, 25 Stat. 476 (U. S. Comp. St. 1901, p. 1312), entitled "An act to prohibit the coming of Chinese laborers to the United States," and Act May 5, 1892, c. 60, 27 Stat. 25 (U. S. Comp. St. 1901, p. 1319) as amended by Act Nov. 3, 1893, c. 14, 28 Stat. 7 (U. S. Comp. St. 1901, p. 1320, entitled "An act to prohibit the coming of Chinese persons into the United States," and under the regulations approved by the Department of Commerce and Labor, authorizing teachers, stu-

dents, travelers, merchants, officials, persons seeking to pass through under bond, and seamen discharged or granted a shore leave at ports of the United States, on giving bond to depart within 30 days, or persons whose physical condition necessitates hospital treatment, to land, only such Chinese persons as are declared to be admissible may enter the United States or can safely be found therein.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 23.*

What Chinese persons are excluded from the United States, see note to Wong You v. United States, 104 C. C. A. 538.]

3. **ALIENS (§ 21\*)—EXCLUSION OF CHINESE—REGULATIONS.**

The general purpose of the regulations for the exclusion of Chinese is to prevent persons of Chinese descent who are aliens from entering the United States, unless within the privileged classes.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 21.*]

4. **ALIENS (§ 31\*)—EXCLUSION—CHINESE SEAMEN.**

Under the regulations of the Department of Commerce and Labor, authorizing Chinese seamen to enter the United States on shore leave, on giving bond to depart within 30 days, a Chinese seaman belongs to the excluded class, and may not enter the United States, except by giving the required bond.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 31.*]

5. **ALIENS (§ 53\*)—SAILORS—SHORE LEAVE.**

The rights of sailors under treaty provisions to shore leave, and to remain within the country after discharge before the consuls of the various nations and the signing of new articles, only applies so long as the sailors are intending to continue their vocation and to leave the United States on the continuation of the voyage, or on taking passage on another vessel, and immediately terminates on their attempt to enter the United States as an immigrant.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 53.*]

Indictment against John G. Crouch for permitting a Chinese alien to land in and enter the United States, without necessity, and without giving bond under the rules and regulations of the Department of Commerce and Labor. Demurrer to indictment overruled.

William J. Youngs, U. S. Atty., and William P. Allen, Asst. U. S. Atty.

Convers & Kirlin (John M. Woolsey, of counsel), for defendant.

CHATFIELD, District Judge. The defendant has demurred to an indictment brought under section 9 of the act of September 13, 1888 (25 Stat. 478, c. 1015 [U. S. Comp. St. 1901, p. 1312]), charging that upon the 2d day of December, 1909, at Brooklyn, within this district, the defendant was the master of a vessel, the Luristan, upon which one Ho Ling had been brought within the United States, as a member of the crew, who was at the time of landing a Chinese laborer and a person of Chinese descent and an alien and a person not lawfully entitled to land in and enter the United States, and that the defendant did, knowing these facts, permit the said Ho Ling to land in and enter the United States, there being no necessity for the landing, and no bond under the rules and r gulations of the Department of Commerce and Labor having been executed.

This indictment is exactly similar in form to the indictment in the case of United States v. Graham, 164 Fed. 654, and the demurrer raises the same questions which were disposed of in that case by this court. The defendant is charged with having brought the Chinaman within the physical limits of the United States, as a member of a privileged class; that is, as one of the crew of his vessel. [1] It has been finally settled that a member of a vessel's crew (not Chinese), even though ineligible for admission to the United States as an alien immigrant, is still entitled to the privileges which the law contemplates that sailors shall have, and is entitled to remain within the physical boundaries of the United States until his vessel sails, without being sent to the observation quarters of the Bureau of Immigration for inspection as an immigrant. Taylor v. United States, 207 U. S. 120, 28 Sup. Ct. 53, 52 L. Ed. 130.

The indictment charges that this Chinese sailor, at the time of his entry into the United States (that is, of his escape), was a Chinese laborer; that he was, hence, not lawfully entitled to enter the United States; that he was not inspected nor examined, and did not enter in the ordinary and legal way, and was not ashore under bond as a seaman. The indictment also contains the necessary allegations as to the exceptions provided for in the Chinese statute (United States v. Wood [D. C.] 168 Fed. 439), and the demurrer would be overruled as a matter of course, were it not for the citation of certain decisions on behalf of the defendant, which must be considered in connection with this case. With one exception, these decisions were not in exactly similar cases; but the reasoning of the courts in the opinions in other districts has made it difficult to overrule the demurrer in this case, without seeming to disregard some, at least, of the conclusions reached in some of those cases.

[2] The statute in question, as at present in force, is known as "An act to prohibit the coming of Chinese laborers to the United States," according to the act of September 13, 1888. But as amended in the act of May 5, 1892 (27 Stat. 25, c. 60 [U. S. Comp. St. 1901, p. 1319]), and the act of November 3, 1893 (28 Stat. 7, c. 14 [U. S. Comp. St. 1901, p. 1320]), and in all subsequent legislation, the title was changed to "An act to prohibit the coming of Chinese persons into the United States," and under the regulations approved from time to time by the Department of Commerce and Labor only teachers, students, travelers, merchants, officials, persons seeking to pass through under bond, and seamen "discharged or granted shore leave at ports of the United States," upon the giving of a $500 bond for departure within 30 days, or persons whose physical condition necessitates hospital treatment, are allowed to land at all.

According to these regulations, which have been properly adopted under the law, only Chinese persons declared by the treaty with China and the laws to be admissible may enter the United States, or can safely be found therein. The various regulations provide for the bonding of seamen and other aliens, who may enter under bond at *certain ports,* which are the only places at which Chinese persons other than diplomats can enter the United States, and also provide that,

immediately upon arrival of "Chinese persons at any port" among those mentioned, an examination shall be had; and by another rule the time of departure of any vessel, by which such persons shall have been brought to one of these ports of entry, must be brought to the notice of the office in charge of Chinese exclusion laws at that port, in order that all persons whose application for permission to land has been denied may be placed on board.

[3] The other provisions of these regulations need not be gone into at length. The general purpose of the regulations is plain, and it has been held in many cases that persons of Chinese descent who are aliens cannot enter the United States, unless they are within the permitted classes. Lee Ah Yin v. United States, 116 Fed. 614, 54 C. C. A. 70; United States v. Chu Chee, 93 Fed. 797, 35 C. C. A. 613.

[4] A Chinese seaman belongs to a class which is not allowed to set foot in the United States, except by giving a bond. He is not specifically mentioned in the excluded classes; but the provision that he shall be admitted only under bond can be based upon no reasoning other than a plain intent that he was to be excluded by the general provisions of the law.

[5] A sailor may be given shore leave, and the statutes contemplate that sailors are entitled to shore leave under the treaties with the various nations, so long as the sailors are intending to continue their vocation and to leave the boundaries of the United States upon the continuation of the voyage, or upon taking passage on another vessel. The discharge of sailors before the consuls of the various nations and the signing of new articles is plainly contemplated by the treaties and laws as something affecting persons not intending to apply, and not actually applying, for admission to the United States, and hence not subject to laws relating to alien immigrants.

This question was plainly determined in the case of Taylor v. United States, supra; but there is nothing in the Taylor Case which would prevent the indictment of a ship captain who attempted to smuggle into the United States a sailor with a loathsome disease, who did not intend to reship, and who did intend to become a public charge, to the knowledge of the captain; nor is there anything in the decision in the Taylor Case to prevent the indictment and punishment of persons who might smuggle Chinese coolies into the United States, by bringing them upon a vessel, some disguised as diplomats and some as sailors.

The word "seaman" as used in the statute refers to an occupation. That occupation is recognized by the laws and the cases as continuous, and as covering the future, unless it is terminated by something contradictory to a continuation of the professional calling which the word implies. For instance, a seaman may go ashore, and the day after determine that he will desert the sea. If he should then return to his ship, and ask to be discharged, under such circumstances that the captain or officer discharging him assisted in his becoming an immigrant, with knowledge of his intentions, it might well be held that the other provisions of the law requiring the sending of such an alien to the immigration offices for inspection, would come into play. Oth-

erwise, no smuggling of an alien immigrant would be possible, provided he were, up to the time of the smuggling, doing the work of a seaman upon a vessel.

It would seem that the application of the statute should depend upon the purpose for which the landing was made, and that the change from the status of a seaman into that of an immigrant occurs when a person attempts to get into the United States as an immigrant, for the sake of remaining as a resident, and that he should be judged under the immigration laws according to that standard, rather than according to what he had been before he changed his status by forming the new intent.

The Chinese exclusion acts provide for the exclusion or deportation of all persons of Chinese descent who do not come within certain allowed classes. The purpose of these acts is to exclude (as the title of the statute shows) Chinese generally. On the other hand, the immigration statutes are intended to allow the admission of aliens generally, and to exclude only those who come within certain harmful or undesirable classes.

In the case of Taylor v. United States, supra, the court says that, under the immigration law (Act March 3, 1903, c. 1012, § 18, 32 Stat. 1217) the words "vessel bringing an alien to the United States" mean "bringing with intent to leave," while the words "officer," etc., "who shall land or permit to land any alien," refer to a leaving of the vessel by the alien to reach the shore, and for that reason the sections of the statute, even though relating to criminal charges, and hence to be construed strictly, were held by the Supreme Court of the United States to be inapplicable to seamen, who have been frequently held, in other cases, to belong to a class which did not "land," or did not enter the country, even though on shore, when touching at a port, or in the course of their employment.

The Chinese exclusion act, however, does not speak of bringing a Chinaman to the United States, but uses the language "bring within the United States on such vessel, and land or attempt to land." Here bringing within the United States would seem to mean the physical transportation to a point inside the boundary, whereas the landing, as held in the Taylor Case, would seem to mean the stepping upon shore from the ship, free of restraint or intention to return.

Assuming that the doctrine of the Taylor Case be construed to apply to a Chinaman, then the decision of the Taylor Case goes no further than to hold that when a Chinese seaman arrives at a point where he can, within the United States, land (that is, step on shore), if he does this in the capacity of a seaman, subject to the regulations which require a bond, he will be considered as not thereby effecting a violation of the statutes. But if he goes ashore, either to become an immigrant, and hence to terminate his employment as seaman, or to evade the regulations requiring the giving of a bond, and to thus become a Chinaman subject to deportation under the Chinese exclusion acts, that the act of allowing him to land, if knowingly committed by a captain, would be within the provisions of section 9 of the statute of 1888, under which the present indictment is brought.

In the case of United States v. Ah Fook (C. C. A.) 183 Fed. 33, it is held that the Chinese exclusion acts do not apply to seamen while serving upon a vessel touching at an American port—citing In re Moncan (C. C.) 14 Fed. 44; In re Ah Kee (D. C.) 22 Fed. 519; In re Jam (D. C.) 101 Fed. 989; as well as United States v. Burke (C. C.) 99 Fed. 895. In the latter case the court also said that the immigration statutes did not apply to seamen who are in port as seamen. But the very statement of this rule seems to carry with it the decision of the present demurrer, under the indictment in question. The Chinese exclusion acts have all provided for the regulation of shore leave for Chinese seamen under bond, so that these seamen, as such, are not to be excluded; but they are under compulsion or under bond to be treated as seamen, and to be compelled to remain seamen, for just as soon as they lose the character of seamen, and become intending immigrants, they are liable to exclusion and deportation, under the statutes above referred to.

In the recent case of United States v. Jamieson (C. C., So. Dist. of N. Y., 1911) 185 Fed. 165, the court in the neighboring district has held that the act of 1888, in so far as it provides for the exclusion of Chinese, limits that exclusion to laborers, although other persons, outside of certain classes, cannot get in because they cannot get the necessary certificates from the Chinese government, and hence are to be treated as excluded. The court in that case hence assumed that the word "laborer" was as broad as the word "person" in the various provisions of the statute.

This would seem to be correct, for under section 13 of the statute, which is still in force, any Chinese person, or person of Chinese descent, who is here without right, can be deported, and certainly only those who are allowed to get in or to remain in the United States are thus protected against deportation.

But the court in the Jamieson Case holds that there is no doubt on authority that a seaman is not a laborer, and decides the question of excluding seamen by concluding that, whether at sea or while at a port of the United States, intending to sail or reship, a seaman cannot properly be made subject to the statute excluding Chinese persons (other than the excepted classes).

For the purposes of classification, the word "laborer" might not be commonly applied to a seaman, although the work that a seaman does might, under many circumstances, be classed as labor. But to hold that the Chinese exclusion acts do not at all apply to seamen, for the reason that they are not known as laborers when at sea, does not meet the difficulties presented by the Chinese exclusion acts.

The court in the Jamieson Case has applied the decision in the Taylor Case to Chinese seamen, who are not allowed to be in the United States except as seamen whose leaving is secured. What would happen to a Chinese coolie who intended to secure work as a cook upon a fishing smack, entirely within the coastwise waters, and hence within the United States, but actually working as a seaman, and who had come here before the mast?

In the Jamieson Case the court says that:

"The practical difficulties of such an absurd requirement, when applied to all ships of any nation shipping Chinese seamen, require one of two alternatives—either that they are excluded altogether, or are not contemplated in the statute at all."

The "absurd requirement" which the court refers to seems to be the attempt to apply the Chinese exclusion acts to seamen who wish to escape or to get into the United States as laborers, and to cease their former employment as seamen. We can see no reason why a total nullification of the statute should be upheld. The statute in question may cause hardship, and may compel Chinese seamen to be subjected to a different scrutiny than other seamen; it may result in preventing their having the same shore leave as other seamen; but so long as the treaty with China does not prevent this, and so long as it is necessary, for the enforcement of the Chinese exclusion acts, to distinguish between the treatment of Chinese seamen and the seamen of other countries, that hardship is no reason for an utter disregard of the law, when the person coming into the country has been a seaman.

It has been urged that the merits of this question might as well be decided upon the demurrer, and this court has not, therefore, disposed of this case upon the short ground that the indictment in question charges that the defendant allowed a laborer to enter, but has discussed the case upon the statement of the indictment that this laborer had been a Chinese seaman. The facts that convictions have proven difficult to obtain, and that indictments do not result in the infliction of punishment, because the charges cannot be substantiated, do not present as much of an obstacle as a holding that evasion of the law is permissible, provided the man who seeks to enter has come to this country as a seaman.

The demurrer will be overruled.